All right. Mr. Roth, you may proceed. Thank you again, your honors, for allowing me to argue on behalf of my client, Mr. Jeremy Lillich. This case essentially starts and ends with an encounter at a 24-hour car wash, which in and of itself is not a normal business. You'd see 24 hours, but nonetheless, it was a business that legally operated for 24 hours. And the first issue in the case we're asserting is the nature of the start of that encounter. Mr. Lillich and his co-defendant, Mr. Steffens, were customers at the 24-hour car wash. Deputy Michael Lins testified that this was suspicious in and of itself due to a recent rash of burglaries that had taken place in the area. One was at a nearby car wash in the town of Sloan, which was near the car wash in question. Two others were at a school and a church. Now, both the magistrate judge and the district judge in this case had disagreement as far as what was the nature of that initial encounter. The magistrate saying it was non-consensual, a Terry stop, but supported by reasonable suspicion. The district judge was saying, no, it was a consensual encounter. However, both judges agreed there is no illegality in the initial stop. We would submit to you that both judges were incorrect. This was a non-consensual encounter and supported by reasonable suspicion. And to break that down a little bit, why was that initial stop non-consensual? We're arguing Mr. Litch was detained and restricted in his movements. The magistrate judge's reasoning in this regard was correct, that this was a non-consensual stop. Well, counsel, weren't the two individuals unrestricted? Weren't they actually continuing to wash the car, to work on the interior of the car, to dry the car off? I mean, that doesn't strike me as the typical sort of restrictive police encounter. I mean, the officers were there, but these two fellows were basically going about their business while the officers observed them. Why isn't that an accurate assessment of what happened at night? Yes, your honor, and I believe that's true to a point. At first, that was not the case. And I believe I can't remember the exact words, but I believe the individuals had to ask permission to resume the drying of the car is what they were doing when the officers came in. This wasn't, you know, as the government asserts, just a encounter in wide open public on the street. This was an enclosed space that three officers came into to encounter these guys. They asked for the IDs and they said they're investigating. Again, I can't recall the exact wording, but they're investigating a possible burglary or rash of burglaries. And so it kind of heightened any reasonable person's senses to the point a reasonable person would not have felt free to leave or terminate the encounter. And we believe that's important for this part of the analysis, but also later for the Miranda part of the analysis. I know the district court factors to say that this was a consensual encounter. The district court did consider your honor's statement. These guys had continued to dry off the car or wash the car. The district court also found there's no police lights, no physical touching, no threats of arrest. However, you know, the other factors at play here, the district court really tried to stop more heavily in the fact that this was a non-consensual encounter. Again, as I said, the number of police officers, the enclosed space, the blocking of the door, we believe the balance of the factors weighs more heavily in favor of that it was a non-consensual stop. And so the district court and the magistrate found, you know, even if this was not a non-consensual encounter, there's still a reasonable suspicion to support the stop or the brief detention. And the main reasons were, as the district court said in its order, you know, it was the time of day, the fact they were located at a car wash in the recent rash of burglaries. I kind of want to start in the opposite. I mean, as far as the recent rash of burglaries, the officer did point to one specific burglary at a car wash in a nearby town, as well as those two others I mentioned, the school and the church burglaries. But, you know, this isn't essentially breaking down 10 factors and trying to, you know, identify them and do this piecemeal one by one. Why is there no reasonable suspicion here? I mean, there's essentially two factors at play here. The car wash, the fact these guys were at a car wash late, and then the recent rash of burglaries. And we assert the whole factor about being at the car wash late. I mean, that's enough right there that there is no reasonable suspicion here. There's a 24-hour car wash. Again, as I said earlier, not the usual type of business you'd see open 24 hours. But I mean, there's a reason it's a 24-hour car wash. It's open 24 hours. Anybody could go at any time of night. And so just the fact somebody frequents a 24-hour business, I mean, should not factor in at all to the reasonable suspicion. Well, is there something more than just the mere lateness of the hour? They approach him. They know there's been some burglaries. They know that it's kind of late. And they know that, you know, the car wash is not the busiest place in town at that hour of the day. And they kind of approach and say, hey, what's up, guys? And the story that's offered up is, hey, I always wash my car when I leave the casino. Right. Isn't that what's offered up? And isn't that a sort of like not quite passing the smell test? I mean, isn't that an articulable suspicion at least? Again, it's our argument. It's not. And for the reason of I understand Your Honor's concerns and, you know, as people. Again, it's open 24 hours for a reason. Maybe that particular car wash that's right there next to the casino is open because Mr. Lillich maybe isn't the only one that likes to wash his car for leaving that casino. Who knows how dirty cars get at the casino? You know, again, it's open 24 hours for a reason. If this was a gas station, it's open 24 hours. Maybe it wouldn't be as big of a deal or a convenience store. I think we get down in the weeds of deciding which businesses should or should not be open 24 hours to determine whether it's proper somebody frequents those businesses. Again, the government's argument essentially utilizes the same as the district courts. These are the reasons it was reasonable suspicion. Again, the government's argument is misplaced here because there wasn't reasonable suspicion to conduct the stop. Getting into the actual search, or sorry, the reasonable suspicion to extend the stop and continue to seize Mr. Lillich, you know, Mr. Steffens is the one that had the warrant. He had drugs on his person. It's our assertion. Again, the officers could have left Mr. Lillich there at the car wash, detained Mr. Steffens and been on their way. It's our argument that there wasn't the sufficient nexus between Mr. Steffens and the car such that the officers could detain the car for the later dog search or even a search without the dog. It was Mr. Steffens who was the driver for a short period of time. He's the one that had the warrant. Mr. Lillich was the owner. There's nothing, as I believe both the magistrate and district court found about Mr. Lillich that would have provided reasonable suspicion to detain the car. Both courts found that Lillich could have left at a minute where they found he wasn't detained and was improperly questioned. And so again, it's our assertion. There wasn't that sufficient nexus between Mr. Steffens and the car such that the officers could search the car. Now the government argument in the case analogizes, you know, the classic case of there's the odor of marijuana that comes from the car and that gives the officer the reasonable suspicion or the probable cause to extend the stop for a dog or search through the car because that odor of marijuana. Cut out for about 10, 15 seconds. Hopefully there wasn't any questions. I was talking about the odor of marijuana and those lines of cases. Again, it's our assertion that the cases are not analogous. I mean, when you have the odor of marijuana that emanates from a car, I mean, there's a lot of things that are analogous to that and the odor of marijuana and Mr. Roth, if that happens again, keep talking because we can hear you and see you. All right. I apologize, Your Honor. I wasn't aware. You're good, even though it may be acting up on your end. We can see you and hear you, I think. So just proceed. Just forge through. All right. I will do that. So our argument was just that the odor of marijuana, that's not analogous to this case because, again, there's not that connection between Stefan's in the car like there would be between an odor of marijuana in the car. Now, the magistrate judge in the district court adopted this reasoning that, you know, hypothetically, Lilich could have left with the car, but was unable to do so. Again, we still argue there needs to be this nexus between Stefan's in the car and with Mr. Lilich, there's this logical disconnect that says he should have been able to leave with the car, but couldn't because of his license. And our argument is that this case doesn't really turn on whether Mr. Lilich had a license because hypothetically, if he had the license, he could have left with the vehicle. So essentially, with the inevitable discovery test, the government has not met its burden as far as that test goes because they weren't pursuing that other alternative substantial line of investigation. Turning to the brand argument, the district court had found that some of Lilich's statements should be suppressed during that second encounter because he should have been able to leave. But the other statements during the first encounter should not have been on his consensual encounter, or alternatively, it was just a Terry stop where Miranda wasn't required. It's our argument that he was sufficiently detained or not to the point where he was felt free to leave that Miranda should have been read to him and those statements should have been suppressed. I'm getting to my rebuttal time. If your honors don't have any other questions, I'll yield the rest of my time for rebuttal. Thank you. Mr. Lammers. Thank you. Good morning, your honors. My name is Jack Lammers and I represent the Northern District of Iowa. I'm an AUSA here and I also represent the United States. I'd like to address, first of all, the issue of consensual encounter. And your honors, if you could excuse me for one second, I'm getting some feedback. OK, so at any rate, the defendant in this particular case, Mr. Lillick was with Mr. Steffens. They were in a car wash at two o'clock in the morning in Sloan, Iowa. This was a unusual experience. I think Deputy Lentz testified that he had, in fact, never seen anyone in that car wash at that particular time of night. And what happened was Deputy Lentz did exactly what we want law enforcement officers to do. He was doing his rounds in small town, Iowa. He had information that there was burglaries in Sloan, Iowa the night before. Two specific burglaries. I think there was a burglary at a church and I believe that there was a burglary at a school. But importantly, he also had information that there was an attempted burglary at that particular car wash in January, just under a month before. He's on patrol. He sees the defendant or he sees someone, I guess. I think he sees feet. He can see through the car wash that it's occupied. He sees feet there. He drives down. He parks approximately 100 yards away and is able to see into the open bay of the adjacent, the bay adjacent to where the defendant is. And at that point, sits, observes and sees someone come through the doors that adjoin the two car washes, look out and then go back in. The deputy then comes into the bay with the reserve deputy, walks into the open bay, announces his presence as sheriff, walks in. At no point during the encounter that follows was a gun drawn. At no point during the encounter that follows were the defendants ordered to do anything. And at no point, I think, as your honor pointed out, at no point were their movements restricted in any way. In fact, the defendants continued to go about their business while the officers engaged them in a colloquy, in a conversation, I guess. No raised, no raised voices. And I think the testimony states that. I think Deputy Lentz testified that he didn't raise his voice at any point. And I think actually you can see it in the body camera video from Deputy Simone, who came on the scene at a later point. So initially there's two officers that come in. There's Deputy Lentz and there is the reserve officer. They walk in the only door that's open into the car wash. And I know that there's been some discussion from defense counsel that, you know, they blocked the exit or they blocked the door. Importantly, and I think the district court noted this, they did not, in fact, block the exits. There are two exits. Actually, there's three. There's bay doors at either end of the of the of the car wash bay. So the defendants would have driven in. I think it's the South Bay door. And then there's a North Bay door that was closed or almost closed where they saw the feet. And then there's a doorway that they could walk in and out of between the two between the two bays, one unoccupied and the other one occupied. So the officers walk in, engage the defendants in conversation. Importantly, to note here, under the defendant's test or under his formulation, law enforcement could never have a consensual encounter with defendants unless they were in an open street, unless they happened to be out on the street where they could walk in any direction when they were approached by officers. And that just simply can't be the test. If an officer spoke to someone in a store and he walked in the door and the defendant or the person they wanted to speak to was there, necessarily the officer would be in the way of the exit. But that doesn't mean that that all of a sudden turns the otherwise consensual encounter into a detention. So the officers come in, they speak to the defendants. The defendants have no restricted movements, no guns drawn, no pressure on them. The officer asks for ID, the defendants voluntarily provide the ID. At that point, Deputy Lenz actually calls in on a microphone, finds out who Mr. Lilich is once he has his card or Mr. Lilich, excuse me, finds out that Mr. Lilich is previously drug involved. He also finds out from the conversation that they had been at the Winnevegas. And this is a place that deputies know is a daily source of calls for them where they have drug involvement or where they are investigating drug involvement. So there's maybe a minute more conversation, something along those lines. The entire encounter lasts seven minutes. At that point, I think Deputy Simone arrives on the scene and Deputy Lenz goes back to his patrol car. When he goes back to his patrol car, he calls in the IDs. He finds out that Lilich is barred from driving and that Steffens is valid. So he comes back in, provides the IDs back to the two defendants. I think there's a little bit more conversation. And then importantly, the officers leave. Now, the officers probably had reasonable suspicion at that point to continue their investigation. They certainly had reasonable suspicion to continue their investigation when they came into the bay, but they probably have drug reasonable suspicion for continuing their drug investigation. However, they decide, well, we've accomplished what we need to accomplish. We leave. This goes even more to show that the initial encounter is a consensual encounter. At that point, they are exiting the bay when they are near the doorway. And I think you'll see this on the videos, your honors. When they're near the doorway, Deputy Lenz receives from dispatch, hey, wait a second. Mr. Steffens, the co-defendant here, may have a warrant. So they come back in and they start to speak with the defendants again. And at this point, the defendants are still not restrained. In fact, Mr. Lilich has the car door open. He is drying off the mats of the car door. No one has been placed in handcuffs. No one has been arrested. No one has done anything other than continue conversation. So Deputy Lenz is standing next to Mr. Steffens. And then at that point, shortly after a little bit more conversation and importantly, the conversation relates to where the vehicle was from. I think Mr. Lenz or Mr. Lilich stated that he had purchased the vehicle from a person by the name of Jimmy Merchant. Law enforcement knew Jimmy Merchant was, I think they referred to him as a thief and involved in drug trafficking. And at this point, then the deputy receives confirmation or receives information of the warrant. So he pats down Mr. Steffens and immediately finds methamphetamine in Mr. Steffens' pocket. That is approximately. Excuse me. I want to ask a question about this warrant because it's just been puzzling. I'm sorry, Your Honor, I can't hear you. Can you hear me now? No. Never mind, go ahead. No, I'm sorry. I did. I had my volume down. I apologize. I can hear you now. Yeah, my question was, I'm curious about this warrant. It's described as a quote, dangerous drugs warrant. Now, what in the world kind of a crime is dangerous drugs? So I think that's, Your Honor, shorthand that the that dispatch had in regards to the in the transcript of the detention hearing. But what it actually was is he had a warrant for a supervised release revocation on he has a prior federal drug felony. And there was a warrant by probation for violation of that supervised release. And so probation would have notified dispatch as to the existence of that warrant. And I'm assuming that it's shorthand by dispatch as for dangerous drugs. OK, thanks. Yes, Your Honor. So at any rate, at this point, just prior to the pat down, within approximately 30 seconds is the only time that anyone has said, we don't want to answer questions or can I leave or anything along those lines. And at that point, the statement was by Mr. Lilick, can I leave? Immediately thereafter is when they find the drugs. And at that point, they know that Mr. Steffens was the driver of the vehicle. They know that Mr. Lilick was barred from driving and they know that Mr. Steffens had a warrant. They also know that Mr. Lilick has prior drug involvement because they had learned that from dispatch. They also know that they had come from a high trafficked drug area. There is substantial reasonable suspicion at this point to detain everyone for further investigation. And in fact, pursuant to the Davis case, and I believe, Judge Shepherd, you authored that case, there is probable cause to search the vehicle. Once the drugs are found in the pocket of Mr. Steffens, at that point, I guess for lack of a better phrase, Your Honors, it's game over. The drugs in the pocket of the driver of the vehicle. And I think the quote is, and I understand counsel's argument that it's the odor of marijuana that really gets us there. But the language in the Davis case says, even if the odor of marijuana isn't enough, once they find the drugs in the driver's pocket, there's probable cause to search the vehicle. Once there's drugs in Mr. Steffens' pocket, there's likely probable cause to search the vehicle. There's certainly reasonable suspicion to detain the vehicle, which they did. And then they ran the drug dog around the vehicle. And once the drug dog alerts, obviously there's probable cause to search the entire vehicle. I guess I just asked the court to take into consideration all of the factors pursuant to the Griffith case in regards to consensual encounter. I think the district court did a thorough analysis in regards to this. And I think the determination is that this is a consensual encounter based on all of the interactions. No guns drawn, no orders to the defendants, no restricted movements of the defendants. The only factors that weigh the other way on the scale are the fact that there were three officers eventually. But again. Well, when I was when I get the argument where you're at, but the place when I was studying this case where I kept breaking down is like, well, what's the deal with the warrantless search of the phone? You know, I mean, as I'm looking at that, I mean, and there's no real discussion by the judge, you know, district judge goes kind of tripling by it. It's you know, it's just in there. It's going to inevitably be discovered. And yeah, the phone's discovered. But what about the but but but when you search that phone, don't you need the warrant first when you seize it? I don't think there is a warrantless search of the phone, Your Honor. Am I wrong? Maybe I didn't see a search warrant for the phone, right? I don't believe there is. I don't believe there's a warrantless search of the phone. And I don't believe that this is in the record. And I'm happy to address this if the court would like. I don't believe there's a search. I believe there is a search of Mr. Lillick's phone, but I don't believe they could get into that phone. So there's nothing in that phone that really pertains to this case in one way or the other. I believe there was, in fact, a search search warrants on both Stefan's phone and Mr. Lillick's phone. But that really wasn't an issue for for our suppression, Your Honor. OK, so maybe I just missed it because I just saw that the phone was grabbed and I was looking at, you know, and it had been searched. I saw something in there eventually and I was trying to figure out, well, how did that happen? But that was not an issue here in this appeal. It's not an issue in this appeal. I don't believe the phone was searched at the scene. I do agree with the court that the phone was eventually recovered from the vehicle, but I don't believe it was searched. And again, this was not a part of the appeal. I'm I'm fairly certain based on my recollection and my recollection only, I have no records to point the court to that this was done, any search was done pursuant to a search warrant. Beyond that, Your Honors, I believe this to be a consensual encounter. If it is not a consensual encounter, I believe the magistrate court and the district court both correctly determined that there was reasonable suspicion to extend any type of contact with the defendant, both at the first encounter and at the second encounter. And I would request that the court uphold the district court's well-reasoned opinion and deny the defendant's motion to suppress. And if the court has has no questions, then I will rest on the brief. Very well, thank you, counsel. Mr. Roth. Thank you, Your Honor. Again, a couple of points to keep this brief. The government had argued that what the appellant's trying to say is there can never be a non-consensual or sorry, consensual law enforcement encounter in an enclosed space has to be out in public on the street. And that's not the argument. Again, we're going back to the factors of whether this can be consensual or non-consensual. It's based on all the different factors. I mean, encountering somebody in a store, of course, that can be a consensual encounter. But again, it's going to be based on the factors of the case. Like, is the officer blocking the door? I mean, are we dealing with a small convenience store? Are we dealing with like a large Walmart or Target? I mean, it's different factors like that. And so our argument is all the factors in this case show that this was a non-consensual encounter. And so as far as that goes, that's our argument, was a non-consensual encounter. The government's argument that, you know, just the finding the drugs alone, again, going back to those lines of cases, I think the Davis case, the government side, again, it comes down to all the different factors to support whether there is that reasonable suspicion or probable cause. There was only the drugs found in the pocket of the person who may have drove the car for a short period of time, but wasn't the owner. And so, again, we're finding there is not that sufficient nexus between Stephens and the car. And so if there's no further questions, we'll submit and ask your honors to reverse and remand the case. Thank you. All right. Thank you, counsel. Thank you for your arguments this morning. The case is submitted and the court will render a decision in due course. Mr. Roth, before you leave us, I want to extend the thanks of the court for your service, both in this case and in the previous case, as appointed counsel for these appellants. Your service is appreciated. Thank you, your honor. I apologize also for my computer problems. No, not at all. You were fine. Thank you.